THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHAS. KOHLMAN & COMPANY, INC., Now JOHNSON-BLAKE COMPANY, INC., Relator, *v.* WALTER W. LAW, JR., and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, November 15, 1923.

Taxation — franchise tax based on net income — proceedings to review assessment made under Tax Law, article 9-A — petitioner's business consisted of buying unfinished cotton cloth outside State, finishing it outside State and selling it through agents — part of orders were accepted outside State and part were accepted at home office in State — under Tax Law, § 214, subd. 2, paragraph c, all orders received or accepted within State should be allocated to this State — case remitted to determine what contracts were made within State and what contracts were made and closed without State.

In proceedings to review the action of the State Tax Commission in assessing a franchise tax under article 9-A of the Tax Law, it appeared that the petitioner's business consisted of buying unfinished cotton cloth outside the State of New York and having the same finished in mills located outside the State and selling the cloth through its traveling salesmen and agents; that a part of the orders

for the sale of cloth were taken and closed outside of the State and a part were confirmed or closed within the State.

*Held,* that under paragraph c of subdivision 2 of section 214 of the Tax Law all contracts which were closed within this State either by original sale or by confirmation and all orders received or accepted by the petitioner at its place of business in this State should be allocated to the State of New York and all orders taken and closed outside the State should not be so allocated.

In view of the fact that the assessment in this case seems to be based on a bulk estimate which the petitioner claims does not actually represent the sales made within this State, the matter should be remitted to the State Tax Commission to determine what contracts were made within this State and what contracts were actually made and closed without this State by petitioner's agents.

CERTIORARI issued out of the Supreme Court (after the taking effect of the Civil Practice Act)* and attested on the 9th day of September, 1922, directed to Walter W. Law, Jr., and others, as and constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing a franchise tax against the relator for the year beginning November 1, 1920, based on its business for the year ending December 31, 1919, under article 9-A of the Tax Law. (See Tax Law, art. 9-A, added by Laws of 1917, chap. 726, as amd. by Laws of 1919, chap. 628, and Laws of 1920, chap. 640.)

*John B. Doyle* [*Harrison Clark* of counsel], for the relator.

*Carl Sherman, Attorney-General* [*C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondents.

McCANN, J.:

The relator, a domestic corporation, in the year 1919 was in business which it designates as " converting cotton goods." The main office of the corporation was in the city of New York. On or about July 1, 1920, it filed with the State Tax Commission a report in writing for the year ending December 31, 1919, under article 9-A of the Tax Law of the State, being chapter 726 of the Laws of 1917, as amended by chapter 628 of the Laws of 1919 and chapter 640 of the Laws of 1920. The report stated that for the year ending December 31, 1919, its average monthly value of all accounts receivable was $515,580.68; that the monthly value of accounts receivable arising from the sale of property not manufactured within the State but sold by its agents and located within the State at the time of the receipt of the order was $103,116.13. The Tax Commissioners revised this report by allocating to the State of New York the total amount

---

* See Civ. Prac. Act, § 1283, as amd. by Laws of 1922, chap. 355.— [REP.

of relator's average monthly accounts receivable, regardless of the location of the property, the sale of which resulted in the accounts receivable, and regardless of whether the orders were accepted within or without the State. The tax assessed was $12,974.81 which has been paid under protest. The relator insists that the total amount which should be allocated to the State of New York is $103,116.13. Upon a rehearing the original assessment was affirmed. The relator appears before this court upon the return of the writ of certiorari. A brief review of the facts shows that the relator's business was that of buying unfinished cotton goods from manufacturing mills, all of which were without the State of New York; no purchases from mills were made within the State. These unfinished goods were shipped from such mills to finishing plants all of which were located without the State. From such finishing plants the goods were shipped to the relator's customers, and the controversy now arises as to the nature of the transactions which resulted in the sale of such goods. Four hundred and twelve thousand four hundred and sixty-four dollars and fifty-five cents of the relator's average monthly accounts receivable arose from the sale of property which never was within the State. Agents were employed by the relator outside of the State to sell its goods; some of such agents being permanently located and others were traveling salesmen. The sales apparently were not all conducted in the same manner. It is claimed that the goods were sold from a price list supplied by the relator or were sold subject to the relator's approval at the main office. The orders were filled by the relator as they came into the main office and booked. It appears by the testimony that of the accounts receivable, at least one-half of the orders were received by agents outside of the State. Section 214 of the Tax Law (added by Laws of 1917, chap. 726), as amended by chapter 640 of the Laws of 1920, which is applicable to this case, in paragraph (c) of subdivision 2, provides for allocating such sales to New York State and reads as follows: " The purchase or sale of, or trading in, goods, wares or merchandise not located at any place at which the corporation conducted a permanent or continuous business without the State, and where the bills and accounts receivable arose from orders *received or accepted* by any officer or agent, or at any place of business, in this State."

It must be admitted that all transactions which occurred within the State of New York, that is, all contracts which were closed within the State either by original sale or by confirmation, and all orders as stated in the statute, *received or accepted,* should be allocated to the State of New York. The relator in its brief says: " The evidence is that at least one-half of its item of $412,464.55

represented accounts receivable, resulting from orders accepted outside the State by relator's permanently located agents or travelling salesmen. It further appears that the orders were filled as they came in, and that they were sold on a price list supplied by relator from New York, or subject to relator's approval. This testimony evidently means that if the agent deviated from the price list supplied by relator, the order was subject to approval in New York. Even if some orders were sent to relator's office subject to its approval and there accepted, of which there is no evidence, it cannot, on the face of the testimony, be said that all the orders for the sale of goods which were never *in the State were received or accepted in this State by an officer or agent, or at any place of business in this State.*"

It is true, that the testimony is not clear as to the actual amount of contracts received or accepted within the State. The relator states: " The tax below has been assessed and sustained upon the bald assumption that all contracts for sale of goods outside of the State resulting in this item of $412,464.55 made by the relator during the year 1919, were the result of contracts made in the State."

That is true, but the relator claims that many of such contracts were clearly made without the State and that the assessment is erroneous and cannot be held to be valid except " on the assumption that relator's agents did not make contracts but forwarded offers to the home office to be accepted there."

In view of the fact that the assessment seems to be based on an estimate which appears to be a bulk estimate and which the relator claims does not actually represent the sales made within the State, the whole matter should be remitted to the State Tax Commission to take further proof to determine what contracts were made within the State and what contracts were actually made and closed without the State by relator's agents. These should be classified into different kinds of sales having reference to their being consummated entirely within the State or orders taken without the State subject to confirmation or acceptance therein.

The determination should be annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the State Tax Commission.

COCHRANE, P. J., H. T. KELLOGG, VAN KIRK and HASBROUCK, JJ., concur.

Determination annulled, with fifty dollars costs and disbursements, and proceeding remitted to the State Tax Commission.